39 N.J. Super. 430 (1956)
121 A.2d 419
NELSON A. KELLER, PLAINTIFF-RESPONDENT,
v.
TOWN OF WESTFIELD, A MUNICIPAL CORPORATION, AND WILLIAM H. MAIR AND THELMA C. MAIR, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1956.
Decided February 29, 1956.
*432 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Alan Bruce Conlin argued the cause for the respondent (Mr. H. Frank Petit, attorney).
Mr. Robert S. Snevily argued the cause for the appellant Town of Westfield.
Mr. Irvine B. Johnstone, Jr., argued the cause for appellants William H. Mair and Thelma C. Mair (Messrs. Dughi & Johnstone, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
The Law Division invalidated a variance from the zoning ordinance of the Town of Westfield. It had been recommended by the board of adjustment and approved by the township committee.
The original section of the zoning ordinance involved permitted the construction or use of a building in a residence "A" zone for the office "of a professional person, such as a *433 doctor, dentist, lawyer, engineer, artist, photographer, teacher or musician, provided such office or studio is accessory to and part of a residence * * *."
Appellant, William H. Mair, who is described in the pretrial order as "having a degree of Doctor of Medical Technology," purchased a one-family residence in the "A" zone for the purpose of establishing his laboratory and office. His work is said to involve technical laboratory work and tests, as well as application of "physiotherapy procedures and other specialized treatment to patients referred by physicians." The activity was and is carried on under the name Clinipath Laboratories. The premises had been owned and lived in for 25 years by a Mrs. Donohue. After the accomplishment of remodeling, she was to reside there as a tenant. Mair and his wife, who took title as tenants by the entirety, intended to continue living elsewhere.
The Mairs applied for and were granted a permit to renovate and remodel the building so as to adapt it to the desired purposes. The work was performed, the exterior of the house was improved in appearance and a portion of the lot was paved so as to provide off street parking.
About seven months later a complaint was filed in the municipal court against William and Thelma Mair, charging a violation of the zoning ordinance because Mair was not residing there. The magistrate interpreted the language to mean that a professional person could maintain an office in the "A" zone as an accessory use only if the premises were used as his residence also. Accordingly a finding of guilt was made.
Successive appeals were heard in the County Court and by Part B of the Appellate Division, and the conviction was affirmed. State v. Mair, 39 N.J. Super. 18 (App. Div. Feb. 10, 1956). We accept the conclusion that under the ordinance residence in the building is a prerequisite to the maintenance of an office therein.
On July 1, 1954, after the conviction and affirmance in the County Court but prior to the final determination on appeal, Mair applied to the board of adjustment for a variance in *434 order to permit the second floor of the premises to be occupied by a tenant rather than by himself and his wife. The town council, obviously being desirous of eliminating any possible doubt about residence being a requirement when a professional office is opened in the "A" zone, amended the ordinance to read that such office is permissible "providing the person using the office resides in the building * * *." The amendment became effective July 12, 1954.
Three days later, on July 15, a hearing was held by the board of adjustment on the variance request. It is inconceivable that the board was unaware that the governing body had just officially emphasized the mandate which the applicant was seeking to avoid. In any event a variance was recommended to the town council, presumably under N.J.S.A. 40:55-39(d) (which authorizes such action "in particular cases and for special reasons"), although the language of subsection (c) seems to have been employed.
The findings of fact by the board recite that the variance was sought because of the interpretation of the ordinance by the Magistrate with respect to residence on the premises. They say also that refusal of the relief would "result in particular and exceptional practical difficulties and exceptional and undue hardship * * * in view of the substantial expenditure made in good faith by Dr. Mair under the building permit granted to him," and that granting the application would "not result in substantial detriment to the public good and would not substantially impair the intent and purpose of the zoning plan." Finally this statement is made:
"That the fact that the residential portion of the premises in question was occupied by a tenant rather than by the professional person operating the laboratories would not be detrimental to the public good and would not impair the intent and purpose of the zoning plan and the zoning ordinance."
A copy of the resolution was sent to the town council on July 19 and the variance was granted on September 13. No explanation appears in the record for the inconsistent course of conduct pursued by the governing body and the *435 action taken is difficult to understand. The municipality prosecuted and convicted Mair and his wife for failing to live on the premises; it amended the ordinance to make certain that in such accessory use cases the residence requirement was ironclad; and then it granted a variance to permit Mair and his wife to live elsewhere. In doing so, it apparently adopted the general statement of the board of adjustment that residence off the premises "would not be detrimental to the public good and would not impair the intent and purpose of the zoning ordinance."
The view that the premises do not have to be the home as well as the office of the professional person is wholly inconsistent with the letter and the underlying philosophy of the ordinance. Disagreement by a board of adjustment with the policy of the local law is not a "special reason" which would justify the granting of a variance by the town council. The ordinance is the local law formally enacted by the governing body. It should not be rendered impotent or in effect amended or repealed by means of variances resulting from an after-acquired policy view that the mandate for residence is not a necessary incident of the zoning plan. Variances should not be employed as a substitute for the normal legislative process.
The findings of fact by the board of adjustment (as distinguished from the conclusions) make it plain that the variance was applied for simply to permit the residence portion of the premises to be rented rather than owner-occupied. And the reasons for favorable action by board and council appear to be that Mair expended money in making the improvements and therefore undue hardship would be imposed upon him if he could not conduct his laboratory without personal residence in the building. These grounds in our judgment do not constitute the special reasons contemplated by N.J.S.A. 40:55-39(d) as a basis for excusing non-compliance with the ordinance. Dolan v. De Capua, 16 N.J. 599, 610 (1954); Second Reformed Church v. Bd. of Adjustment of Freehold, 30 N.J. Super. 338 (App. Div. 1954).
*436 The age-old custom of professional men to have offices in their homes has received general recognition by municipal authorities. The same is true of the carrying on of home occupations such as dressmaking, millinery, music instruction, and the like. Bassett, Zoning (1940), p. 100. Zoning ordinances have sanctioned such practices because the dominant use of the premises is residential and the practice of the profession or home occupation merely incidental. Therefore such dual use is considered compatible with the zoning plan and without tendency to set in motion a process of "disintegration." Beirn v. Morris, 14 N.J. 529, 536 (1954).
However, when the requirement for residence is dropped, what was a home becomes a professional building (where perhaps more than one doctor, lawyer, etc., may engage in the pursuit of his profession); or an erstwhile home is transformed into a place where the business of dressmaking or millinery or music instruction is conducted. Thus, a clearly discordant element is injected into a high-class residential district and erosion of the overall zoning scheme begins.
A departure from the requirement for residence in such cases is authorized only when it would be consistent with the spirit of the zoning plan and in harmony with N.J.S.A. 40:55-39(d). The record before us is barren of circumstances showing undue hardship or special reasons, within the legislative intendment. Accordingly, the grant of variance cannot be sustained.
We have not undertaken to decide whether the operation of the "Clinipath Laboratories" meets the description of an office of a professional person. Although Mair is referred to as "Dr." throughout the papers and in the application for the variance, it is not suggested that he is a medical doctor. It seems apparent that he holds a license as a director of a bio-analytical laboratory under N.J.S.A. 45:9-42.1 et seq. This does not sanction the use of the title "Doctor" and we assume that the qualifications to use it come from some other source.
*437 A bio-analytical laboratory is a place "organized and operated primarily for the performance of chemical, microscopic, serological, parasitological, bacteriological or any other tests, by the practical application of one or more of the fundamental sciences, to material originating from the human body, for the purpose of obtaining scientific data which may be used as an aid to ascertain the state of health. * * *" N.J.S.A. 45:9-42.2. Requests for such examinations are to be honored at the laboratory only if made by, or on behalf of, or originate from a licensed physician, dentist, osteopath, chiropodist or other person licensed by the board (State Board of Medical Examiners), or the State Department of Health, an authorized public health officer or local board of health * * *. N.J.S.A. 45:9-42.19.
Whether a licensee under this statute conducting his laboratory is a professional person maintaining an office for the practice of his profession, was not argued in the briefs. In view of the result expressed above, it is not necessary for us to reach the problem.
The judgment is affirmed.