107 So.2d 390 (1958)
Burton Joseph GREEN, Jean H. Graham, Bert Cates, Kenneth J. Kemp and Retail Liquor Dealers Association of Dade County, a Florida non-profit corporation, Appellants,
v.
The CITY OF MIAMI, a municipal corporation of the State of Florida, Shell's City, Inc., a Florida corporation, and Earnest Overstreet, Dade County Tax Collector, Appellees.
No. 58-32.
District Court of Appeal of Florida. Third District.
December 16, 1958.
Rehearing Denied January 7, 1959.
Pallot, Cassel & Marks and Richard H. Hunt, Miami, for appellants.
William L. Pallot, City Atty., and E.J. Fitzpatrick, Asst. City Atty., Miami, for City of Miami.
Milton M. Ferrell, Miami, for Shell's City, Inc.
Homer Kimbrell, Miami, for Earnest Overstreet.
HORTON, Judge.
Appellants sought to enjoin the issuance of a liquor license to the appellee, Shell's City, Inc., and to invalidate City of Miami ordinance No. 5963, which granted a zoning variance from city ordinance No. 2896. The chancellor found the appellants had failed to carry the burden of proof required to invalidate a municipal ordinance and denied all relief. This appeal followed.
Shell's City is a supermarket which now incorporates under one roof the facilities offered by a modern-day shopping center. It features one-stop shopping for the entire family wherein an unlimited variety of goods and services can be obtained. Shell's City is located in an area which, since 1945, has been governed by City of Miami ordinance No. 2896, an amendment to city ordinance No. 1682, the latter being known as the general zoning ordinance. Ordinance No. 2896 provided, inter alia:
"* * * that no license, or licenses, shall be issued to any applicant for a vendor's license for consumption or sale of liquor on the premises or off *391 the premises in that zone designated as the `Combination Residential and Business Zone', if the place of business of said applicant is situated less than two thousand five hundred (2,500) feet from an established licensee; * *."
In an effort to expand the variety of goods offered at Shell's City, an attempt was made to obtain a state beverage license and open a package liquor store. An agent of Shell's City purchased a beverage license from certain individuals who operated a store several miles away. Subsequently, application was made to the City of Miami Planning and Zoning Board for a variance as there were five established beverage licenses within 2,500 feet of the proposed location. The planning board denied the application for a variance with a finding that an insufficient showing was made within the requirements of the city charter. Upon appeal to the City Commission, the variance was granted and city ordinance No. 5963 followed.
The principal issue on this appeal is the validity of the ordinance granting the variance when tested by the restrictions found in the city charter. The municipal charter is to a city what the constitution is to a state. The powers of the municipality have been clearly defined, either by the residents themselves when incorporation is accomplished under the general laws of Florida, or by the legislature when a municipality is incorporated by special act. Conceding the right of a municipality to alter its zoning ordinances, we turn to the particular section of the city charter of Miami which establishes the necessary prerequisites to a zoning variance:
"Section 72(t) Variance permits.  A variance of the restrictions, regulations, and boundaries established by the zoning ordinance may be granted under the same terms and conditions as an addition to, amendment, supplement, change, modification, or repeal of the Zoning Ordinance. No variance permit shall be issued however, except in instances where practical difficulties and unnecessary hardship shall be incurred by the applicant if said permit were refused." [Emphasis supplied]
This is generally to the same effect as § 176.14(3), Fla. Stat., F.S.A., which requires a showing of "hardship" before an interest can establish itself as an exception to the general public.
A review of this municipal ordinance granting a zoning variation necessarily requires the application of the "fairly debatable" rule which is now the established test for judicial review of zoning ordinances. City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148; City of Miami Beach v. Prevatt, Fla. 1957, 97 So.2d 473; Town of Surfside v. Abelson, Fla.App. 1958, 106 So.2d 108. The question then narrows to the specific question of whether or not Shell's City made a sufficient showing of "practical difficulties and unnecessary hardship" so as to preclude further review under the "fairly debatable" rule.
As a method of implementing the charter requirements, the prescribed application for variance contained the following:
"1. The land in question cannot yield a reasonable return if used only for the purpose allowed in that zone;
"2. That the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood, which may reflect the unreasonableness of the Zoning Ordinance itself;
"3. The use to be authorized by the Variance will not alter the essential character of the locality."
Shell's City, in their application for a variance which they contend supports a showing of "practical difficulties and unnecessary hardship", said:
"1. That this petition is not based upon a request for change of use allowed in the specific zone, but is based *392 rather upon a request permitting the use ordinarily allowed in the subject zone but restricted by the distance between this property and existing licensees. The land in question can yield a reasonable return so long as your petitioner is permitted to transfer its existing liquor license for package store only so as to properly serve the general public. Your petitioner's operation has become that of a one-stop shopping center, and only by offering a comprehensive selection of merchandise and stock can your petitioner compete with the expansion of similar centers.
"2. The circumstances which result in a hardship are unique in that the general conditions of this particular neighborhood have little or no bearing or effect upon your petitioner's operation, but rather the demands of the general public throughout a very wide area far exceeding this particular neighborhood are affected. Your petitioner serves customers in the tens of thousands from the City of Miami as a whole and outlying areas who demand the convenience and efficiency of a combination shopping center and who desire and deserve an opportunity to purchase all manner of merchandise at such a center. The granting of this variance would permit persons from many distant areas to combine in their general shopping the purchase of package goods, and would affect only slightly if at all the operation of the other licensees in this area.
"3. The use to be authorized by this variance will not alter the essential character of the locality in that no consumption of alcoholic beverages would be permitted, but merely the purchase of package goods on occasions where shoppers primarily motivated by the purpose of purchasing food stuffs, drugs, household wares and goods would be the customers of the licensee. Since your petitioner draws from so wide an area, there would be no unfavorable impact upon the economy of the locality; indeed it can be argued that a favorable general effect upon business conditions in the area might be expected. It is further apparent that the increased source of package goods would be dispersed through a large area, and that the immediate locality suffers from no lack of such source at the present time.
"Summarizing this hardship your petitioner alleges that the proximity of other licensees to this property will not adversely affect said licensees, and the variance will permit the petitioner to meet the increasing demand for expansion of facilities and conveniences to its customers from many parts of the County, which it must objectively do in order to compete with the many other one-stop shopping centers in Dade County."
In our opinion, the showing made by the application of Shell's City does not meet the required standards. However, conceding for the sake of argument that the question of "hardship" is debatable, we conclude that the "hardship" was self-created within the meaning of Josephson v. Autrey, Fla. 1957, 96 So.2d 784. The principle of "self-created hardships" was so thoroughly covered in the Josephson case that we feel it necessary to quote from that opinion (at pages 789-790):
"The authorities are generally in accord on the proposition that in seeking a variance on the ground of a unique or unnecessary hardship, a property owner cannot assert the benefit of a `self-created' hardship. Appellee cites our cases where we have held that a property owner will not be precluded from attacking the basic validity of a zoning ordinance merely because the ordinance was in force when he acquired the property. The situation is entirely different. The invalid ordinance can have no effect whatsoever *393 and its invalidity can be assaulted at any time. The application for a variance permit recognizes the basic validity of the ordinance and seeks the grant of a variance purely on the basis of some hardship peculiar to his particular property. When the owner himself by his own conduct creates the exact hardship which he alleges to exist, he certainly should not be permitted to take advantage of it. On the proposition of the effect of self-created hardships see the following: Garlick v. City of Miami, Fla. 1953, 67 So.2d 440; Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, Fla. 1955, 82 So.2d 880; Mayer v. Dade County, Fla. 1955, 82 So.2d 513; Freitag v. Marsh, 280 App.Div. 934, 115 N.Y.S.2d 838; Stevens v. Connor, Sup., 120 N.Y.S.2d 345; Deer-Glen Estates v. Board of Adjustment and Appeal, 39 N.J. Super. 380, 121 A.2d 26; Keller v. Town of Westfield, 39 N.J. Super. 430, 121 A.2d 419; Gleason v. Keswick Improvement Ass'n, Inc., 197 Md. 46, 78 A.2d 164; Caccia v. Zoning Board of Review, R.I. 1955, 113 A.2d 870; Newcomb v. Teske, 225 Minn. 223, 30 N.W.2d 354; Rathkopf, Law of Zoning and Planning (3d Ed.), p. 748; 8 McQuillin, Municipal Corporations (3rd Ed.), Sec. 25.168, p. 296. Also see City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493."
In the instant case, Shell's City did not question the validity of zoning ordinance No. 2896, but on the contrary, recognizing its validity, sought a variance on the ground of hardship. The facts which Shell's City contends establish a hardship were obviously self-created for the reason that Shell's City knew of the restrictive zoning ordinance prior to the acquisition of the beverage license. To subsequently claim that it was a hardship to own a beverage license which could not be used on the premises of its merchandizing plant would be to permit one to reap an advantage created by his own conduct.
Accordingly, the decree appealed from is reversed and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
CARROLL, CHAS., C.J., and PEARSON, J., concur.